Case: 1:26-cv-03091 Document #: 1-1 Filed: 03/19/26 Page 1 of 31 PageID #:7

**IN THE CIRCUIT COURT OF COOK COUNTY**
**CHANCERY DIVISION**

FILED
10/15/2025 4:13 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH10526
Calendar, 10
34907220

| | |
|---|---|
| **Edward "Coach" Weinhaus**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **Regina A. Scannicchio**, And | ) |
| the **Illinois Judges Association** | ) |
| | ) |
| Defendants. | ) |
| | ) |
| And | ) |
| | ) |
| **Twelve Respondents In** | ) |
| **Discovery Named Herein** | ) |

Case No.: **2025CH10526**

**Jury Trial Demanded**

**<u>VERIFIED COMPLAINT</u>**
**(For Damages and Equity)**

**"People of the same trade seldom meet together, even for merriment and diversion, but the conversation ends in a conspiracy against the public, or in some contrivance…"**
Adam Smith, *An Inquiry into the Nature and Causes of the Wealth of Nations* (1776)

Now Comes, Plaintiff Edward "Coach" Weinhaus ("Plaintiff"), seeking redress for Defendant Regina A. Scannicchio and the Illinois Judges Association's violation of his Constitutionally protected right to Due Process. In support of this claim, Plaintiff states as follows:

**INTRODUCTION**

State Court Judges in a Business League[1]? That is how one Illinois Circuit Court Judge and three Illinois Appellate Judges contrived and coordinated to deprive

---

[1]. Any judge who participates in an official Business League under the United States Tax Code § 501(c)(6) where members of their business league do not, by rule, automatically recuse themselves from a case involving other business league members should immediately recuse themselves here.

1

FILED DATE: 10/15/2025 4:13 PM    2025CH10526

Plaintiff of his Constitutionally protected Right to Due Process by denying him the opportunity to seek redress through the State of Illinois judicial process. Here, the Plaintiff attempted to appeal the unlawful and unfounded decisions of Regina A. Scannicchio wherein she repeatedly entered post-decree orders for fees and costs designed to quash his use of Illinois unified court system only to be told by her Business League compatriots that that no appeal would be permitted as an *admitted* result of Judge Scannicchio's influence over fellow Business League members. The Business League members' domination of the state judiciary means that Plaintiff and others who cross the Business League can have no right to appeal a trial court decision, a right purportedly available to all, which Plaintiff was unfairly denied by the Business League.

The Business League's members and leaders took concerted actions to defend one of their own, Regina A. Scannicchio, denying fundamental rights after failing to intimidate or dissuade Plaintiff from pursuing his rights. It is no coincidence that this Business League picked up in Cook County, right where *Operation Greylord* left off, ultimately bringing in convicted felon ex-Alderman Ed Burke's wife to help cover their tracks[2]. Plaintiff's ability to obtain justice in Illinois facing this Business League's leaders and members as its arbiters at the appellate level and above, while its members work in concert for each other's benefit has been chilled for long enough. This lawsuit follows.

---

2.    Neal Edelstein's 17-part podcast *The Cooley Account* describes the longstanding Burke influence in Illinois corruption, including that of Burke's wife, retired Illinois Chief Justice of the Supreme Court, Anne Burke. See the first 20 minutes of Episode 9 and Episode 17.

FILED DATE: 10/15/2025 4:13 PM    2025CH10526

## GENERAL ALLEGATIONS AS TO ALL PARTIES

### A. PARTIES

1.    Plaintiff is a citizen of Missouri, residing in St. Louis, and had been a litigant in Illinois.

2.    Defendant Hon. Regina A. Scannicchio ("Hon. Regina A. Scannicchio") is an Illinois state court judge, living and working in Cook County, Illinois. She is a citizen of Illinois[3]. Defendant Regina A. Scannicchio is the Presiding Judge of the Domestic Relations Division of the Circuit Court of Cook County, Illinois and has served on the Board of Directors of the other Defendant (the IJA) since at least 2021 and through the term ending in Spring 2025. She no longer serves as a director of the IJA.

3.    The Illinois Judges Association ("Business League") is an Illinois-based Business League as defined pursuant to 26 CFR § 1.501(c)(6)-1, It is located in Chicago, Illinois. Upon information and belief, all of its members are citizens of Illinois and none of its members are citizens of Missouri. Five of seven of the current Illinois Supreme Court are affiliated with the Illinois Judges Association. Business League is a quasi-governmental body that oversees the appointment of judicial ethics members and approves various appointments throughout the state's unified court system through its members who oversee the entire Illinois Court system.

---

3.    Non-party Hon. Michael B. Hyman ("Presiding Appellate Justice") is an Illinois justice of the First District Court of Appeals, living and working in Cook County, Illinois. He is a citizen of Illinois. Non-Parties Hon. Carl A. Walker and Hon. Mary Ellen Coghlan ("Appellate Justice I" and "APPELLATE JUSTICE II" respectively) are Illinois justices of the First District Court of Appeals, living and working in Cook County, Illinois. They are citizens of Illinois. Together, the three panel Appellate Justices are referred to as "Appellate Justices".

4.    Business League holds itself out as an arm of the government; through federal filings where it requests "sovereign immunity" under the 11th Amendment to the United States Constitution.

5.    The Illinois Judges Association provides any number of benefits to its members including, *inter alia*, coordinated actions by its members to mitigate the threat or harm ethical complaints would have on its members and makes a coordinated effort to quash negative sentiments about its members. The Illinois Judges Association benefits its members by ensuring they defend each other in ethical matters and encourages its members to act cooperatively to defend one another.  Upon information and belief, the state of Illinois reimburses members for their dues to the Illinois Judges Association.

6.    The Business League and its leadership actively promote – proudly - an agenda which flouts the United States Constitution, calling our founding protections as "grossly flawed." Describing it even after as "more suitable to an 18th century world."[4]

## B. PREVIOUS DISPOSITION, JURISDICTION, VENUE, AND JURY TRIAL

7.    This matter is being brought primarily pursuant to 42 U.S.C. §§ 1983.

8.    This Court has subject matter jurisdiction pursuant to Illinois' General Unified Court System's general jurisdiction.

---

[4]    These statements were published in a letter to the *News Gazette* by Presiding Appellate Justice on behalf of the Business League as its President and criticized in a subsequent letter by a former Business League President, Justice Robert J. Steigmann.   https://www.news-gazette.com/opinion/letters-editor/judge-misjudges-u-s-constitution/article_5661ec89-2c72-5eac-a836-93b90e08c8bc.html - last visited September 23, 2022.

4

9. This Court is an appropriate venue as the events herein occurred within the circuit and the Defendants reside within the circuit and all the witnesses are primarily located in this Circuit but for Plaintiff.

10. Plaintiff requests a trial by jury.

11. Plaintiff brought his action via counsel in the Northern District of Illinois on April 18, 2024 in Case # 1:24-cv-03061.

12. After Judge Alonso's recusal, *infra*, Judge Blakey dismissed the case with prejudice on June 28, 2024 the day he was assigned to the case without full briefing on Business League's Motion to Dismiss under the *Rooker Feldman* doctrine. ECF # 15.

13. Plaintiff refiled an Amended Complaint via counsel in the afternoon of July 22, 2024 to slim down the factual allegations and to focus centrally on the *Rooker Feldman* aspects. ECF # 16.

14. The morning of July 24, 2024, Judge Blakey dismissed the case with prejudice with no motion pending of his own accord for lack of jurisdiction under the *Rooker Feldman* doctrine. ECF ## 17-18.

15. As such, the federal court had no jurisdiction.

16. Plaintiff appealed to the Seventh Circuit (Case # 24-2473) on the sole jurisdictional basis of dismissal under *Rooker Feldman*.

17. After hearing oral argument on June 4, 2025, the Seventh Circuit declined to overturn the jurisdictional finding that federal courts lacked jurisdiction

and issued unbriefed, unargued, advisory guidance without jurisdiction on the slimmed down Amended Complaint on June 18, 2025. ECF No.: 43-44.

18.     Plaintiff filed a Petition for Rehearing *en banc* which was denied on September 15, 2025. ECF No.: 59.

19.     As the federal courts denied jurisdiction and no court with jurisdiction has ruled on the case, this matter is subject to the State Court's general jurisdiction for these matters and the statute of limitations is extended by the appropriate savings clause.

20.     **Nothing in this action requests or demands the undoing of any previous decision.**

21.     No action the Court takes will in any way affect the underlying action's disposition, children, property, or the other party thereto. No orders will be undone.

22.     This action seeks damages caused by *extra-judicial* actions and interference with US Constitutionally protected rights by the Defendants. Most importantly, it seeks to enjoin members of the Illinois Judges Association from conspiring against the public.

I.      **STATEMENT OF FACTS**

**PLAINTIFF**

23.     Plaintiff is an attorney licensed and in good standing before the Courts of California, Missouri, and Illinois. He currently has multiple active cases before the various circuit and district courts of Illinois as an attorney, primarily serving plaintiffs in Freedom of Information Act violations. He had been a litigant before a

6

Cook County Circuit Court, a court under the auspices of Illinois Court System for the times relevant herein.

24. Plaintiff briefly resided in Illinois to move his children's mother to be closer to her family in 2012, the same year he dropped his Missouri Dissolution Action and instituted the Illinois Dissolution Action. In early 2013, he returned to Missouri from where he has served as a custodial parent for all relevant times.

25. He earned a dissolution through his Illinois Dissolution Action which gave cause for him to appear as a litigant in the Cook County Circuit Court's Domestic Relations Division through 2015. His case remained pending in the Cook County Circuit Court's Domestic Relations Division for various post-decree issues. Hon. Regina A. Scannicchio assumed her role as the judge in Plaintiff's case after judgment was entered in 2015 and which was terminated in 2023.

26. After substantially overpaying child support (Supplemental Judgment of 7/8/15), Plaintiff had won significant redress throughout the entire post-decree divorce process including full-time residential custody of two of his children. During the post-decree matters, he had worked multiple jobs, worked for five major universities as a professor, earned three graduate degrees, started a public company, and became a licensed attorney in multiple states.

27. Plaintiff filed a case in the Eastern District of Missouri on January 31, 2022, as part of a defamation claim, demanding a third-party media investigation into the ethics of the Hon. Regina A. Scannicchio, before whom he then had no matters pending. (Case 4:22-cv-00115 E.D. Mo. "Third Party Media Investigation

7

Case"). The Hon. Catherine D. Perry actively enforces the settlement agreement and its terms requiring the Third Party Media Investigation, including in public rulings where each of the parties to the settlement have mentioned or referenced the Hon. Regina A. Scannicchio. E.g. ECF Docket #27 pg. 2.

## ILLINOIS JUDGES ASSOCIATION:
### A BUSINESS LEAGUE, *NOT A LABOR ORGANIZATION*, THAT STIFLES CRITICISM

28.     The Illinois Judges Association (the "Business League"), is a judge advocacy and lobbying group organized pursuant to Internal Revenue Code § 501(c)(6).

29.     The Business League is a group of "people of the same trade" as Adam Smith would say (*supra*), albeit *judges*. They are judges bound to each other in their efforts at mutual gain and jointly exercising their pursuit of it. Their association does not end when their members don their robes, as Judge Alonso acknowledged in his recusal (*supra*).

30.     The Business League promotes its "Membership Benefits" on its website (IJA.org). It represents the interests of judges - *not litigants*. It offers individualized assistance to its judge-members for dealing with *public matters*. It takes particular attention to assist its member-judges for "public criticism." It represents its members to the media, advocates for its members for renumeration and benefits, and *individually assists in ethics matters*.

31.     The Business League does not qualify as a Labor Organization in Illinois under statute. It is not a union, it is a *trade* association. Judges have *chambers* for *commerce* when it comes to the Business League under the statute.

8

FILED DATE: 10/15/2025 4:13 PM   2025CH10526

32. This is in fact the promise the Business League offers its members through its promise of coordinated reputational promotion.

33. The Business League has ensured Illinois state court judges are the highest paid in the land, only behind California. In fact, a first year Illinois judge vastly out-earns a federal magistrate.

34. Thus, the Business League, which advocates for judges' compensation and protects judicial reputations, has been wildly successful at both. Indeed, that is its purpose.

35. Recently, the IJA empaneled former justices of Illinois appellate courts, including Hon. Anne Burke (Ret.), former Chief Justice of the Illinois Supreme Court and wife of convicted felon, ex-Alderman Ed Burke to defend IJA judges when the IJA judges might have been prevented by the rules of ethics from doing so themselves. See Exhibit 1.

## IJA: A BUSINESS LEAGUE AS AN ARM OF THE STATE

36. It is axiomatic that appellate justices oversee trial court judges. If not for the Appellate Court's inherent authority to enforce its issuance of remands and reversals, its opinions would be merely supervisory. Appellate courts thus hold trial courts in contempt as a matter of course, if only rarely. Most people forget this inherent truth because the idea that judges wouldn't be arbiters of justice, thus requiring contempt findings is almost unthinkable.

37. Further, lawyers are often prohibited from suggesting critiques of courts that reflect poorly on the judiciary by ethical rules. E.g. IRPC 8.4(d). In short, we

don't often invoke the inherent disciplinary power of our appellate houses of "truth" but they are nonetheless the backbone of our system.

38. Historically, supervising justices in Illinois refused to join the Business League, because they were "management" and "[m]anagement should not join the union[sic]."[5]

39. For its early existence (founded in 1972), supreme court justices were not permitted to join the Business League; they knew better than to mix with and tie their future compensation to those they oversaw. That uneasy dividing line was breached consciously by Appellate Court Justice Tom Moran, who, already flouting ethical duties by overseeing trial court fellow-members, insisted he retain his membership in the Business League when becoming an Illinois Supreme Court justice.

40. Now, Supreme Court justices and appellate court justices join the Business League without a second thought, retain their leadership positions, and market the Business League in their judicial bios. Further, they assume duties to the Business League by becoming board directors, officers, committee chairs, and benefit from promoting it, and protecting their fellow Business League members.

41. This change in membership, association, duties, and leadership in the Business League (not a union) has established that *litigants' interests* firmly rank behind those of the judges' own pecuniary interests through their joint reputational

---

5. *"Passing the Gavel: A History of the Illinois Judges Association 1971-1996"* Hon. S. Wachowski and Hon. P. Benefiel. https://www.ija.org/assets/IJA%20History%20Book%201%202.pdf

protection in a Business League outweighing any individual litigant's right to a fair hearing.

42.     The Business League's core promise to its Members is to defend Members' reputations and professional standing, for the pursuit of their joint financial benefit.

43.     They even seek to defend each other against *just* criticism, according to the panel of judicial luminaries they have empaneled to defend themselves. See Exhibit 1. The Burke-led Emeritus Council of the Business League's purpose is to defend judges "deeply invested" in cases, falling victim to "just criticism." They write (Exh. 1): **"There may be times when judges are entitled to be justly criticized by the media. There are also times when they are not."**

44.     But it is their domination of an arm of the state and the state's obeisance to the Business League that is so nefarious.

45.     At all times relevant hereto, members of the Illinois Supreme Court's bios (as of late 2023) summarize the incredible power the Business League has amassed by merely encroaching into the halls of Illinois' Supreme Court since Justice Moran made his stand in the mid-1970's.

46.     Numerous past and present members of the Illinois Supreme Court were and are active members of the Business League.

47.     Other justices are featured speakers at Business League events or are covered in the Business League's trade publication.

11

48. The Business League's capture of the Illinois Judiciary's workings is so complete that 50% of the committee the Illinois Supreme Court relies on for ethics must be appointed by the Business League (the Illinois Judicial Ethics Committee).

49. That is, the Business League, whose members work together to control the Illinois Supreme Court, is empowered by the State of Illinois to write the rules of ethics for all of the judges for the entire state of Illinois. These rules are then adopted by the Business League-dominated Illinois Supreme Court.[6]

50. Therein lies the complete domination to which PLAINTIFF is subjected – when the Business League itself is challenged, the Business League, as an arm of the state, protects itself, and the individual's right to due process is sacrificed.

## PLAINTIFF 'CROSSES' BUSINESS LEAGUE'S HON. REGINA A. SCANNICCHIO

51. The post-decree action was tumultuous for both parties. The Hon. Regina A. Scannicchio sanctioned Plaintiff's ex-wife, reduced her child support, removed her access to the children's passports, and implemented liquidated damages for her disallowing videoconferencing contact (Order 9/16/16). Hon. Regina A. Scannicchio also ordered, at Plaintiff's request, Family Therapy. *Id.*

52. The Hon. Regina A. Scannicchio prohibited the Illinois children from spending time with Plaintiff in their home state of Illinois, banishing them to out-of-state visits with their custodial parent.

---

6. Eg. https://www.illinoiscourtscommission.gov/rules/code-of-judicial-conduct/ ; https://www.ija.org/about-the-illinois-judicial-ethics-committee-for-the-public-   (last visited March 31, 2024).

53.    Attorney Stephen Ross who defended Plaintiff wrote a scathing letter to the Presiding Judge, the Hon. Grace Dickler about the Hon. Regina A. Scannicchio's ethical lapses in refusing Plaintiff access to counsel.

54.    The situation devolved further. Plaintiff's ex-wife brought and lost her second failed order of protection[7]. (Order 10/25/18). Then, absent statutory authority in retaliation for Attorney Ross' letter, the Hon. Regina A. Scannicchio prohibited the children from spending any time with Plaintiff "temporarily" who remained their custodial parent, to cover up for the "banishment" which had led to federal litigation.

55.    And, in a fit of pique or forgetfulness, again ordered the same Family Therapy that Plaintiff sought enforcement.

56.    No Family Therapy occurred although Plaintiff brought numerous motions seeking appointment of the therapist to enact the trial court's two existing orders for it.

57.    Yet still, by April 2019, no therapist had been appointed. Plaintiff, putting his children first, dropped all motions without hearing in exchange for Hon. Regina A. Scannicchio committing to appoint a family therapist to enforce the 2016 and 2018 orders for Family Therapy, whom the Court finally assigned on April 8, 2019.

58.    And Plaintiff's gambit paid off immediately. He won full-time primary residential custody of his first child two months later. And it kept paying off.

---

7.    The Plaintiff's ex-wife also filed and lost an Emergency Order of Protection against her then husband in Lake County in 2024. Lake County Case ## 2024DN00000684, 2024OP00002585.

13

FILED DATE: 10/15/2025 4:13 PM 2025CH10526

59.     On August 21, 2020, Plaintiff won full-time primary residential custody of the second of his children by Hon. Regina A. Scannicchio's order of court.

60.     Post-decree issues concluded by Hon. Regina A. Scannicchio's order of court on September 8, 2020 which included her affirmation of sanctions she issued for Plaintiff having sought (and dropped) the very interventions which led to the successful naming of a family therapist and winning of primary residential custody.

61.     Hon. Regina A. Scannicchio described her basis for sanctions in 2019 ("Hon. Regina A. Scannicchio's Opinion") after Plaintiff voluntarily dismissed his pending motions for one of his requested remedies – the family therapist assignment to enact the trial court's own orders for Family Therapy to begin.

62.     Plaintiff filed a timely notice of appeal of Hon. Regina A. Scannicchio's order sanctioning him on October 8, 2020, when no other matters were pending before her. It was a simple issue[8], a final order, and properly preserved for appeal.

63.     While the appeal was pending, other matters arose before the Hon. Regina A. Scannicchio (bringing Plaintiff back before her) including Hon. Regina A. Scannicchio's ethical lapses in another matter. Plaintiff's involvement in the investigation which now included Stephen Ross' letter, led to a well-alleged request for the Hon. Regina A. Scannicchio to recuse herself or otherwise be substituted. These matters were wrongfully denied which thus called into question all of the Hon. Regina A. Scannicchio's subsequent opinions.

---

8.   It did not relate to any children's issues and never claimed to do so.

14

64. When these matters concluded, Plaintiff filed timely notices of appeal, and consolidated the appeals[9] successfully when necessary, in the First District.

65. Jurisdiction had again been properly invoked by a timely notice of appeal before the First District Court of Appeals when no other matters were before the Hon. Regina A. Scannicchio.

66. Appellate Justices were presented with Plaintiff's brief that directly recounted the ethical lapses of Hon. Regina A. Scannicchio, their fellow Business League Director. The Appellate brief included appeal of Hon. Regina A. Scannicchio's Opinion and called into question her inability to fulfill her judicial duties as a result of ethical concerns raised by other attorneys, including Stephen Ross.

67. Shortly thereafter, Hon. Regina A. Scannicchio began contacting other judges about Plaintiff, his cases, and her opinion of him. Hon. Regina A. Scannicchio communicated her view of Plaintiff to Appellate Justices prior to their adjudication of the appeal.

68. Upon information and belief, the Hon. Regina A. Scannicchio discussed Plaintiff, the Appeal, and the impact the Appeal would have on her and by extension the Business League.

69. The Appellate Justices were leaders in the Business League, know what the Business League's purpose is and that they were to gain from protecting the Business League and the Hon. Regina A. Scannicchio's reputation. Thus, they knew

---

9. These new matters did pertain to children's issues and thus the consolidated appeal did as well invoking Ill. Sup. Ct. Rule 311(a).

they were to gain personally by dismissing the Appeal without review of the merits based solely on Hon. Regina A. Scannicchio – a Business League Director's – opinion.

70. The Business League thus transferred value to the Appellate Justices for refusing to entertain the Appeal by defending Hon. Regina A. Scannicchio's reputation and therefore that of the Business League which she served in a leadership role.

71. After the Appeal was filed and before its dismissal. the Third Party Media Investigation Case, which was filed on January 31, 2022 in the Eastern District of Missouri federal court. Its introduction reads:

> A rogue judge in Illinois (the [Hon. Regina A. Scannicchio]) forbade Illinois-resident children from being inside the State of Illinois in one of the many abuses of the family law system around the country. A father had the temerity to fight back on behalf of his children…
> Complaint, at ¶ [Introduction].

72. The Third Party Media Investigation Case Complaint details many of the same issues noted above but is particularly graphic about the unrelated-to-Plaintiff allegations:

> While waiting for his own case to be called, [Plaintiff] witnessed [Hon. Regina A. Scannicchio] trample on the basic civil rights of an African American, unwed mother seeking to find the father of her two-year old child. [Hon. Regina A. Scannicchio] sentenced the two-year old's only known parent to seven days in prison after ordering an illegal search and seizure in the courtroom. [Hon. Regina A. Scannicchio] admitted the elements of the illegality of the search which was captured in a court transcript.

> Id. at ¶ 58.

73. Plaintiff had demanded as part of the Complaint that a podcast episode into the Hon. Regina A. Scannicchio's ethics be published:

16

Defendants shall create a second new episode ("[Hon. Regina A. Scannicchio] Episode") of their podcast distributed as would any other episode specifically covering the actions of [Hon. Regina A. Scannicchio] to be titled, "Abusive Discretion" to cover [Hon. Regina A. Scannicchio's] career of (wittingly or unwittingly) abusing her position to harm parents. Defendants will pay [Plaintiff] to assist in producing the [Hon. Regina A. Scannicchio] Episode and will grant Plaintiff final authority on editorial decisions related to the [Hon. Regina A. Scannicchio] Episode.

Id. at ¶ 89(d).

74. Following settlement, a federal district court has been enforcing a third-party media investigation into Hon. Regina A. Scannicchio's ethical violations as a result of Plaintiff's actions[10] which has already yielded results. ECF #27's Exhibit 4.

75. The Third Party Media Investigation Case is a matter of public record and impacted the reputation of Business League and one of its Directors (Hon. Regina A. Scannicchio). As such, the Business League was responsible for defending itself and its Director and did so.

76. Upon information and belief, Appellate Justices too learned of Third Party Media Investigation case prior to dismissing the Appeal.

---

10. This issue was raised in the Enforcement action in the Third Party Media Investigation Case by the Defendants (ECF #27). Plaintiff's Reply Brief mentions the increased reporting legal news around the ethics of the Hon. Regina A. Scannicchio and her connections to convicted felon ex-Alderman Ed Burke, and his continuing influence on Illinois State Court judges. ECF #31. The demanded Second Episode from the original Complaint has not occurred and any discussion of it would be subject to Confidentiality. Other legal media has begun uncovering the issue. See "Burke's lasting legacy: "Cook County's courts harbor favored, connected judges", *Cook County Record*, Feb. 8, 2024, https://cookcountyrecord.com/stories/654365619-burke-s-lasting-legacy-cook-county-s-courts-harbor-favored-connected-judges ; *also see* "Election 2024: Ald. Burke headed behind bars, but Burke's judges still rule the Cook County bench ", *Chicago City Wire*, Feb. 2, 2024 https://chicagocitywire.com/stories/654032788-election-2024-ald-burke-headed-behind-bars-but-burke-s-judges-still-rule-the-cook-county-bench . (After the Parties' discussion of Hon. Regina A. Scannicchio and the defendants' production of their Exhibit 4 to comply with the agreement, that particular enforcement request was denied, while the Federal District Court retains jurisdiction over the remaining enforcement obligations including Confidentiality. ECF #32.).

FILED DATE: 10/15/2025 4:13 PM    2025CH10526

## HON. REGINA A. SCANNICCHIO ACTS TO PROTECT HERSELF FROM CRITICISM

77. Upon information and belief, Hon. Regina A. Scannicchio became aware of the Third Party Media Investigation Case from an attorney who practices before her because he tracks Plaintiff's cases ("Tracking Attorney").

78. Hon. Regina A. Scannicchio has admitted to working with Tracking Attorney to attack Plaintiff outside the courtroom.

79. Hon. Regina A. Scannicchio worked with Tracking Attorney to file an ethics complaint against Plaintiff for his judicial reform work at ChildrenOfTheCourt.org (Plaintiff is also the founding funder of the Legal Accountability Project improving clerkships and served as the Special Media Advisor to the Chairman of the Knesset's Constitution, Law, and Justice Committee during Israel's debates over judicial reform in 2023).

80. Hon. Regina A. Scannicchio acted to defend her reputation when Plaintiff's reform activities challenged her political position in an election year. See fn. 12. Additionally, Hon. Regina A. Scannicchio admitted to reaching out to another judge to protect her reputation against Plaintiff even though no pending case was before her or the other judge involving Plaintiff.

81. Upon information and belief, Hon. Regina A. Scannicchio communicated with Appellate Justices and the Business League as it relates to Plaintiff's actions criticizing her in efforts to defend her reputation and succeeded in receiving their support.

18

FILED DATE: 10/15/2025 4:13 PM    2025CH10526

**THE BUSINESS LEAGUE ACTS TO PROTECT ITS OWN**

82.     The Business League's promise of benefits to the members and directors for taking coordinated actions to protect members from ethical complaints is the crux of the Business League's value.

83.     Upon information and belief, the Business League actively tracks any public information about its members, especially its leadership including actual and potential media coverage as well as court complaints, for the purpose of delivering the promised member benefits.

84.     Appellate Justices are either active members and directors of the Business League and market their involvement in the same, or have held such leadership roles as to be inextricably-linked to the Business League's success. (See, for e.g.: State Court Bios of Justices Hyman and Walker, and Justice Coghlan's history as Business League Convention Chair.)

85.     They served together as Appellate Justices on the same district court panel in question for the named Plaintiff.

86.     The harm to one of the Business League Directors visits harms upon other members, officers, and directors who promote their affiliation with and leadership of the Business League due to the prestige and duties of being a Director and the public shame to all judges for one of their leaders to be called out publicly for his/her ethical lapses.

87.     The Illinois Code of Judicial Canon, requires that the Appellate Justices disclose their pecuniary relationship with the Hon. Regina A. Scannicchio and the Business League.

88.     Further, the then-existing canons required:

   a. "CANON 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities"
   b. CANON 3: A Judge Should Perform the Duties of Judicial Office Impartially and Diligently.

89.     Rather than follow the Judicial Canons and disclosing their interests in protecting the Hon. Regina A. Scannicchio's reputation, they proceeded to protect her.

90.     The First District Court of Appeals appointed a panel made entirely of Business League Marketed Justices - the Appellate Justices.

91.     When Plaintiff's timely appeal was before the Appellate Justices calling into question the ethics of Hon. Regina A. Scannicchio, they ignored Plaintiff's due process rights in favor of their duty to the Business League and their fellow member.

92.     They merely cited the Business League's prior pronouncement she communicated to them without review and *sua sponte* denied Plaintiff his appellate rights to benefit themselves by protecting the Defendants and denying jurisdiction.

93.     The reason the Appellate Justices reacted as they did is because the nature of the appeal that landed before them – it was not only coupled with *public exposure* from the just-filed Third Party Media Investigation Case, but it also called into question the very ethics of the Hon. Regina A. Scannicchio who was then a Director of the Business League. Rather than adjudicate the merits of the appeal which would have undoubtedly exposed the ethical violations of a Business League

20

Director and offered substantive rights to Plaintiff, Appellate Justices *circled the wagons* and defended their own, denying both rights and redress for Plaintiff.

94.     There was a timely notice of appeal before the Appellate Justices. There was a timely filed brief before them appealing final orders of the Hon. Regina A. Scannicchio. There were no matters before the Hon. Regina A. Scannicchio. There was an (unopposed) extension of time for the Appellee to respond who had not submitted a brief.

95.     By all objective measures, he was following an earlier pronouncement of the federal courts to appeal significant wrongs visited by Hon. Regina A. Scannicchio in the *state* forum.

96.     Plaintiff had never had an appeal brief before the state court. No other matters were pending. There was no basis in Illinois law for denying jurisdiction to hear a mandatory appeal under Illinois Supreme Court Rule 301.

97.     Rather than disclose their relationship to the Hon. Regina A. Scannicchio or recuse themselves, the Appellate Justices decided to violate Plaintiff's Due Process rights and dismiss the appeal without any consideration of the court's mandatory jurisdiction or the merits of the appeal to benefit themselves and their fellow Business League members without disclosing their relationship.

98.     Plaintiff's Due Process rights were violated when he was denied his right to have his appeal heard by an impartial tribunal – for example, a tribunal that is not composed of Business League members whose financial interests would be

21

FILED DATE: 10/15/2025 4:13 PM    2025CH10526

directly impacted by a decision adverse to another Business League member would be impartial.

99. There was no motion before the Appellate Justices calling for its dismissal. Instead, they refused to hear the appeal on their own motion based entirely on one thing – the words and influence of a Director of the Business League without disclosing their interests in the Business League.

100. Opposing counsel in that matter spoke with Plaintiff the following day and admitted, "They can't do that."

101. They dismissed the appeal without any legal basis for dismissal and without any consideration two weeks after the filing of Plaintiff's Complaint in the Third Party Media Investigation Case demanding further investigation into the Director of the Business League.

102. The dismissal had no basis in law but was instead an effort to protect their colleagues' reputation and, by extension, the reputation of the Business League from which the Appellate Justices directly gained due to their undisclosed membership.

103. The Business League intentionally serves as this conduit of value between economically-affiliated judges and facilitated the gains to Hon. Regina A. Scannicchio, itself, and Appellate Justices.

104. That is, Plaintiff's right to appeal was denied because of *whose* orders he was appealing. Appellate Court Justices chose not to review the appeal, instead

FILED DATE: 10/15/2025 4:13 PM    2025CH10526

relying on the Business League and its weight, by citing Hon. Regina A. Scannicchio, as to why it was denying even considering the mandatory-jurisdiction appeal.

105. Plaintiff lost his right to appeal because the Hon. Regina A. Scannicchio herself – the Business League Director - said he was *bad*, the very judgment he was appealing. The only audience for that were other Business League Members, the Appellate Justices who gained personally from their decision not entertain the appeal.

106. Appellate Justices were even clearer. This was a purportedly-sanctioned litigant by one of their own – by their Business League Co-Director. Plaintiff had a right to appeal *that sanction* and attempted to exercise his due process rights. But the Appellate Justices determined that he did not deserve to appeal the Hon. Regina A. Scannicchio's sanction due to the compensation paid them by Business League and Hon. Regina A. Scannicchio's efforts towards their mutual gain as a Director of the Business League.

107. Thus, Appellate Justices interfered with Plaintiff'ss Due Process right to an Appeal based on the very order he was appealing as they were being compensated by the Business League Scheme to do so.

108. In their haste to defend their Business League Co-Director, they failed to examine:

      a. The brief;

      b. The record;

      c. The law;

d. The case disposition;

e. And Plaintiff's rights.

109. Because the Appellate Justices were so eager to deny the Plaintiff's due process rights, they failed to note that Plaintiff had a timely filed appeal of final orders before it, an absolute right pursuant to Illinois Supreme Court Rule 301.

110. An individual's right to an appeal is not subject to the identity of the judge whose order is being appealed nor the severity of the accusations against her.

111. Plaintiff's appellate rights cannot be subject to the whims and findings of the Judge being appealed prior to the appeal being reviewed, such structure offends the ideal of appellate review.

112. In this situation, Appellate Justices saw the identity of the lower court judge and, to ensure the integrity of the Business League, adopted her position *lock, stock, and talking point*.

113. Plaintiff hired now-Third District Clerk Benjamin Lawson to address the Appellate Justices' decision at significant expense. Mr. Lawson filed a Petition for Leave to Appeal to the Business-League-dominated Illinois Supreme Court.

114. The Business League-dominated Illinois Supreme Court denied Plaintiff's timely filed Petition for Leave to appeal on April 18, 2022, also without disclosing their Business League affiliation and pecuniary gain.

115. The Business League serves as the conduit through which pecuniary benefit accrued to the Hon. Regina A. Scannicchio and its members, tendered by other members - the Appellate Justices. The Business League, through its Scheme,

24

compensated the Appellate Justices, and through their acts the Hon. Regina A. Scannicchio, to deny Plaintiff his due process right to an appeal.

116. Plaintiff no doubt believes he would have won a fair hearing. Plaintiff also spent significant sums of money to attempt to undo the damage the Defendants caused and is experiencing significant ongoing harm due to the continued domination of the Illinois judiciary by the Business League.

## COUNT I - 42 U.S.C. § 1983
### The Hon. Regina A. Scannicchio and the Illinois Judges Association

Comes now Plaintiff and for Count I of his claim for relief against the defendants herein, allege and state as follows:

117. Plaintiff restates and re-alleges all prior paragraphs.

118. Defendants at all times relevant hereto were acting under color of state law.

119. Plaintiff was due the Equal Protection of the law and Due Process before an impartial judge and appellate tribunal.

120. Through Defendants' actions, they illegally interfered with Plaintiff's Constitutionally protected right to due process and prohibited him from seeking redress through the Illinois State Court system.

121. Defendants' actions interfered with Plaintiff's due process rights without any basis in law.

122. These actions were taken under the color of state law in that they resulted in judicial determinations that denied appellate rights when a Business

25

League Member's ethics were questioned and overseen by a majority-Business League dominated review panel.

123.    Additionally, had Plaintiff's rights had been protected, he would have won further redress, the loss of which serves as damages.

124.    Plaintiff has suffered significant financial injury via actually incurred attorney's fees and costs in pursuit of the underlying state court matter and this lawsuit.

**WHEREFORE**, the Plaintiff, Edward "Coach" Weinhaus, respectfully requests this Court grant the following relief:

A. Enter judgment against the Defendants for a violation of 42 U.S.C § 1983;

B. Enter judgment against the Defendants, jointly and severally, in an amount of $1 to Plaintiff for nominal damages;

C. Enter judgment against the Defendants, jointly and severally for compensatory damages;

D. Enter judgment against the Defendants, jointly and severally, in an exemplary amount for punitive damages;

E. Enter judgement against the Defendants for attorneys' fees and costs as allowable by law;

F. Enter judgment requiring the Defendant Illinois Judges Association to require their members to disclose their membership when reviewing the decisions of any other members;

26

FILED DATE: 10/15/2025 4:13 PM 2025CH10526

G. Enter judgment against the Defendants for other such and all possible further relief as is deemed equitable and just in law and in equity, however not to reverse the decisions of any state court.

## RESPONDENTS IN DISCOVERY

125. The following are Respondents in Discovery for the sole purpose of determining new Defendants for further liability under 735 ILCS 5/2-402 and 18 U.S. C. § 1961.

    a.  Hon. Michael B. Hyman

    b.  Hon. Carl A. Walker

    c.  Hon. Mary Ellen Coghlan

    d.  Hon. Barbara Crowder

    e.  Hon. Eileen O'Neill Burke

    f.  Hon. David Overstreet

    g.  Hon. Mary Colleen Roberts

    h.  Hon. Elizabeth Rochford

    i.  Hon. Patrice Ball Reed

    j.  Hon. Anne M. Burke

    k.  Brian Jason Hurst

    l.  Hon. Thaddeus Wilson

FILED DATE: 10/15/2025 4:13 PM   2025CH10526

## DEMAND FOR JURY TRIAL

October 14, 2025

Respectfully Submitted:

By: /s/ *Adam Florek*
Adam Florek
Cook Co. Attn'y No: 100630;
Ill. Attn'y No: 6320615
**Florek Law, LLC**
11 Knollwood Dr.
North Caldwell, New Jersey 07006
Tele: (929) 229-2268
E-mail: aflorek@florekllc.com

Antonio E. Valiente-Rivera, *upon admission pro hac vice*
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, PR 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure and Supreme Court Rule 137, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to those matters which are stated to be on information and belief, and as to such matters the undersigned believes the same to be true.

*/s/Edward "Coach" Weinhaus*

29

Case 1:24-cv-00061 Document #: 141-1 Filed: 10/19/24 Page 30 of 31 PageID #:96

# Bench & Bar

The newsletter of the ISBA's Bench & Bar Section

🔒 ISBA Members, please **login to join this section**

December 2023 • Volume 54 • Number 3 •

# Emeritus Council of the Illinois Judges Association

By *Justice Lloyd A. Karmeier (ret.)*

There may be times when judges are entitled to be justly criticized by the media. There are also times when they are not. What is a remedy for a judge who believes criticism by the media is unfair, unjust, or unwarranted and the judge is precluded from responding because the litigation or the proceeding before the judge is ongoing? How can a judge, who is deeply invested in the proceedings rationally determine whether the media criticism directed at him or her is unfair or is legitimate commentary?

While the Illinois Judges Association has long had a Criticism Response Committee, Judge Eileen O'Neill Burke, the immediate past president of the Illinois Judges Association, took this concept a step further. She and her fellow officers created a new council and launched a new program designed to help judges who believe they have been subjected to unfair criticism or media coverage. It is called the Emeritus Council.

In a recent article then President O'Neill Burke said of the Council:

(It) "is comprised of retired Appellate Justices, retired Chief Judges and retired Presiding Judges. These legal luminaries have agreed to serve the people of Illinois once again.

Illinois Judges who have been the subject of press comment may confer with these Emeritus Council judges and seek advice about how to respond or whether to respond at all. And there may be times when the discussion with the concerned judge will result in a determination that the criticism, if not justified, was at least fair commentary thus leading to a discussion of how to do better as a judge. In some cases, the Emeritus Counsel will issue a statement to the press. Every one of the Emeritus Counsel were extremely successful at this job. They are people who are trusted by judges and the entire legal community."

The goal of the Emeritus program is at least twofold: 1) to aid a judge who has been subjected to unfair comment or criticism to have someone respond on his or her behalf; 2) to help a judge deal with and correct any concerns that have resulted in legitimate critical commentary.

Case 1:24-cv-00061 Document #: 141-1 Filed: 04/19/24 Page 31 of 31 PageID #:207

FILED DATE: 10/15/2025 4:13 PM    2025CH10526

Seven recently retired Justice of the Illinois Supreme Court have been named as co-chairs of the Council. They are Justices Lloyd Karmeier, Thomas Kilbride, Robert Thomas, Rita Garman, Anne Burke, Michael Burke, and Robert Carter.

The real work of the Council is done by the retired judges from each appellate court district who have agreed to implement the program by being available to talk to, counsel, and take recommended action on behalf of a judge who seeks help in responding to criticism, whether fair or unfair and unjust. Following is a list of those volunteers by appellate court district:

**1st District**

Justices Mary Anne Mason, Gino Divito, James Epstein, Stuart Palmer, Warren Wolfson, Shelvin Louise Marie Hall, Robert Gordon and Judges Mose Jacobius, Stuart Nudelman, Grace Dickler, Sharon Sullivan, and Maureen Connors.

**2d District**

Judge Ray McKoski and Justice Robert Spence

**3rd District**

Judge Kathryn Creswell and Justice Thomas Callum

**4th District**

Justice Carol Pope

**5th District**

Justice Richard Goldenhersh and Judges Ron Spears, George Timberlake, and William Mudge

Current IJA President Justice David Overstreet supported the concept when it was introduced and has indicated his continuing support going forward.

The Emeritus Council can only be effective and useful if judges are made aware of this program and its goals. Accordingly, I would urge every chief judge to make this article available to every judge in his or her circuit so all judges will be informed about this program and have readily available the names of the volunteer Emeritus Council judges they may call upon for help.

I would further urge all active judges in Illinois to make themselves aware of who the Council judges are in his or her district. Contact information for the Council judges may be obtained from the Illinois Judges Association website at ija.org; 321 S. Plymouth Ct, Chicago, IL 60604; Phone: (312) 431-1283.

Judges should be ready to immediately refer any issue of perceived unfair or unjust criticism or commentary to that Council judge in his or her circuit or district who can then investigate and confer with the judge to determine the appropriate course of action-or inaction- on behalf of the judge.

The Illinois Judges Association encourages all judges to take advantage of this opportunity to have a reasoned response to unjust criticism and to benefit from Emeritus Council's suggested corrective action appropriate to avoid just criticism in the future.

*Justice Lloyd A. Karmeier (ret)*
*Co-Chair, Emeritus Council of*
*Illinois Judges Association*