IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD WEINHAUS,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS JUDGES ASSOCIATION and REGINA A. SCANNICCHIO,<br><br>Defendants. | Case No.: 1:26-cv-03091<br>Honorable Jeremy C. Daniel |

# DEFENDANT ILLINOIS JUDGES ASSOCIATION'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT FOR LACK OF JURISDICTION

Now comes Defendant, the Illinois Judges Association ("IJA"), by counsel, and submits the following memorandum of law in response to Plaintiff's Motion to Remand to State Court for Lack of Jurisdiction.

## SUMMARY OF ARGUMENTS

1. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), confirms that the *Rooker-Feldman* doctrine is narrow and applies only when a federal plaintiff complains of injuries caused by a state-court judgment and seeks federal district court review and rejection of that judgment.

2. The Verified Complaint on its face invokes federal-question jurisdiction because it asserts claims under 42 U.S.C. § 1983 and the

Fourteenth Amendment, and alleges that Defendants acted under color of state law.

3. The prior dismissal under *Rooker-Feldman* was jurisdictional, not a decision on the merits, and does not automatically bar removal of the materially revised Verified Complaint.
4. Judicial estoppel-does not apply because the IJA has not taken clearly inconsistent positions. In any case, judicial estoppel cannot create, waive, or eliminate federal subject-matter jurisdiction.
5. Plaintiff is not entitled to fees and costs under 28 U.S.C. § 1447(c) because the IJA had an objectively reasonable basis for removal.

## LIMITS OF THE ROOKER-FELDMAN DOCTRINE

What has come to be known as the *Rooker-Feldman* doctrine was addressed by the United States Supreme Court, apparently for only the third time in more than 80 years, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). The Supreme Court observed that as applied by the lower courts, the *Rooker-Feldman* doctrine has sometimes been construed to apply far beyond the contours of the *Rooker* and *Feldman* cases, contrary to Congress' conferral of federal court jurisdiction, and superseding the ordinary application of preclusion law. 544 U.S. at 283.

In an effort to narrow the scope of circumstances in which the lower courts had applied *Rooker-Feldman*, the Supreme Court held that the *Rooker-*

*Feldman* doctrine is confined to cases (1) brought by state-court losers (2) complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced, and (3) inviting district court review and rejection of those judgments. 544 U.S. at 284.

*ROOKER-FELDMAN* DOES NOT APPLY TO THE VERIFIED COMPLAINT

The *Rooker-Feldman* doctrine does not bar federal jurisdiction over the Verified Complaint because Plaintiff alleges injuries arising from alleged extra-judicial conduct and undisclosed conflicts of interest, rather than injuries caused by the state-court judgment itself. Plaintiff alleges that Judge Scannicchio acted to protect her reputation when Plaintiff's reform activities challenged her position in an election year, by reaching out to another judge to protect her reputation against Plaintiff, although no matter involving Plaintiff was pending before either judge. Judge Scannicchio then allegedly communicated with the appellate justices and the IJA about Plaintiff's criticism of her in an effort to obtain their support. (Verified Compl. [1-1], -81.)

Based on these allegations, Plaintiff does not merely complain that the Illinois Appellate Court dismissed his appeal. Instead, the Verified Complaint alleges that Plaintiff was injured by purported extra-judicial interference and undisclosed conflicts of interest that allegedly preceded the dismissal of his appeal. That alleged injury is materially different from an

injury caused solely by the dismissal of Plaintiff's appeal, to which *Rooker-Feldman* would potentially apply. (Verified Compl. [1-1], ¶¶ 67-81, 86-116.)

The Verified Complaint further alleges that Plaintiff was denied an appeal before an impartial tribunal because the appellate panel allegedly included IJA member justices with undisclosed financial or professional interests that would be affected by a decision adverse to Judge Scannicchio. (Verified Compl. [1-1], ¶¶ 86-116.)

In other words, Plaintiff's claim is not that the Illinois Appellate Court's decision was merely incorrect. Rather, Plaintiff alleges that the appellate process was ethically tainted before the appellate court made any ruling. The relief requested by Plaintiff in the Verified Complaint would not require this Court to decide the merits of Plaintiff's state-court appeal or determine whether dismissal of that appeal was erroneous. (Verified Compl. [1-1], ¶¶ 20-22, 67-81, 86-116.)

Read as a whole, the Verified Complaint alleges conduct occurring outside the formal judicial process, which Plaintiff contends deprived him of an impartial appellate forum. The IJA allegedly acted as a "conduit of value," (Verified Compl. [1-1], ¶ 103) among its member judges, facilitating alleged economic or reputational benefits to the IJA, the appellate justices, and Judge Scannicchio. (Verified Compl. [1-1], ¶¶ 77-81, 86-116.)

As compared to the First Amended Complaint filed in the previous case before Judge Blakey, the Verified Complaint includes additional allegations of misconduct by Defendants. Those allegations include claims that Defendants and the appellate justices failed to make disclosures allegedly required by the Illinois Code of Judicial Conduct and acted to protect institutional or reputational interests associated with the IJA and Judge Scannicchio. (Verified Compl. [1-1], ¶¶ 86-116.)

Lastly, the Complaint in the lawsuit before Judge Blakey alleged that Plaintiff's appeal was dismissed without legal basis, to protect the IJA and Judge Scannicchio. Similarly, the First Amended Complaint in that case alleged that Plaintiff's appeal was dismissed without any concern for his equal protection and due process rights.

In contrast, the Verified Complaint alleges that Plaintiff's injury was caused when the appellate justices reacted to public exposure resulting from the Third Party Media Investigation Case against Judge Scannicchio, and that the appellate justices' alleged conflict predated their dismissal of Plaintiff's appeal. (Verified Compl. [1-1], ¶¶ 71-76, 86-116.)

The alleged injury to Plaintiff was the deprivation of his right to due process, which allegedly occurred when Defendants and the appellate justices participated in events leading up to dismissal of Plaintiff's appeal. Although Plaintiff's damages might be measured by later consequences, the alleged

constitutional violations occurred before the dismissal of Plaintiff's appeal. (Verified Compl. [1-1], ¶¶ 62-66, 67-81, 86-116, 117-123.) The relevant inquiry is the source of Plaintiff's alleged injury. If the alleged injury is independent of the state-court dismissal, *Rooker-Feldman* does not apply merely because the same subject matter was before the state court. *See, Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017) (*Rooker-Feldman* does not prohibit federal jurisdiction over claim that alleges injury independent of state-court judgment that state court failed to remedy); *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) (*Rooker-Feldman* does not preclude federal jurisdiction over claim seeking damages for activity that caused injury independently of state litigation).

In *Exxon*, the Supreme Court cautioned that the *Rooker-Feldman* doctrine is narrow and does not bar federal jurisdiction merely because the federal case concerns the same subject matter as earlier state-court proceedings. Here, although the dismissal of Plaintiff's appeal is part of the factual background, Plaintiff frames his federal claim as one for deprivation of due process based on alleged undisclosed conflicts of interest and extra-judicial interference with his constitutional rights. (Verified Compl. [1-1], ¶¶ 20-22, 117-123.)

It is not necessary for this Court to decide whether the Illinois Court of Appeals correctly dismissed Plaintiff's appeal. Instead, this Court would need

to decide whether the Defendants participated in extra-judicial conduct and, if so, whether Plaintiff was thereby deprived of his constitutional right to a fair and unbiased judicial forum. (Verified Compl. [1-1], ¶¶ 20-22, 77-81, 117-123.)

## THE PRIOR FEDERAL DISMISSAL DOES NOT FORECLOSE REMOVAL OF THE PRESENT VERIFIED COMPLAINT

Plaintiff argues that Judge Blakey's prior *Rooker-Feldman* ruling, affirmed on appeal, conclusively establishes that this Court also lacks jurisdiction over the claim alleged in the Verified Complaint. That argument misapplies preclusion principles and overlooks the allegations of the operative pleading in this removed action. (Verified Compl. [1-1], ¶¶ 20-22, 62-66, 86-116, 117-123.)

A dismissal for lack of subject-matter jurisdiction is not an adjudication on the merits. Fed. R. Civ. P. 41(b); *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013). Such a dismissal may have an issue-preclusive effect only as to the precise jurisdictional issue actually litigated and necessarily decided. *See*, *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000) (addition of additional factual allegations on jurisdictional issue will not avoid dismissal based on issue preclusion where facts were available at time of filing original complaint).

The present action is governed by a materially revised complaint. Plaintiff added allegations, changed the framing, and now alleges that he seeks relief for alleged extra-judicial conduct rather than review of a state-court judgment. The IJA does not concede that Plaintiff's allegations are true, legally sufficient, or plausible. However, the IJA is entitled to treat the current Verified Complaint as the operative pleading for removal purposes.. *See, Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. (1995) (court's jurisdictional inquiry proceeds on the basis of the amended pleading). (Verified Compl. [1-1], ¶¶ 20-22, 62-81, 86-116, 117-123.)

The dismissal of Plaintiff's prior complaints on *Rooker-Feldman* grounds therefore does not automatically compel remand. It does not erase the federal claims Plaintiff chose to plead in the current Verified Complaint, which expressly invokes 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, and alleges action by Defendants under color of state law. (Verified Compl. [1-1], ¶¶ 7, 117-123.)

Plaintiff argues that this removed action is based on the same underlying facts as the prior federal case. But the claims alleged are not the same. The 124-paragraph Verified Complaint includes more detailed allegations about the following: (Verified Compl. [1-1], ¶¶ 1-124.)

- Defendant Judge Scannicchio's role as Presiding Judge of the Circuit Court of Cook County's Domestic Relations Division and her service as a member of the IJA board. *Id.* ¶¶ 2, 80.)
- The IJA is allegedly holding itself out as an arm of the government by arguing for sovereign immunity under the Eleventh Amendment in federal filings. *Id.* ¶ 4.)
- More detailed background allegations about the domestic relations proceedings involving Plaintiff, including alleged retaliation; and *Id.* ¶¶ 23-66, 77-81.)
- More specific allegations that the state appellate justices dismissed Plaintiff's appeal without reviewing Plaintiff's brief, the record, applicable law, the case disposition, or Plaintiff's rights. *Id.* (¶¶ 94-102, 107-116.)

Plaintiff also clarifies the allegation that his appeal was denied because of who he was. Plaintiff alleges that the appellate justices dismissed the appeal *sua sponte* because of Judge Scannicchio's alleged influence and to protect her reputation and that of the IJA. (Verified Compl. [1-1], ¶¶ 67-70, 86-116.)

The IJA contends that Plaintiff's current Verified Complaint asserts federal claims on its face and is therefore removable. Federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on

the face of the plaintiff's properly pleaded complaint. *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987) ("The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").

Although the Court need not determine the sufficiency of Plaintiff's allegations at the removal stage, several allegations in the Verified Complaint appear conclusory and may ultimately implicate Rule 8 pleading standards. Its 124 paragraphs are unlike the "short and plain statement of the claim showing that the pleader is entitled to relief" required by Fed. R. Civ. P. 8(a)(2). (Verified Compl. [1-1], ¶¶ 1-124.)

The Verified Complaint alleges that the IJA and Judge Scannicchio influenced appellate justices to dismiss Plaintiff's appeal, and that the IJA served as a "conduit" for value or reputational benefit. (Verified Compl. [1-1], ¶¶ 86-116.) Several allegations appear conclusory or speculative, including assertions, *i.e.*, regarding alleged institutional favoritism, reputational motivations, and purported coordination among judicial actors. (Verified Compl. [1-1], ¶¶ 92-116.) Despite Rule 8(a)(2)'s requirement of "a short and plain statement of the claim," the complaint must include sufficient facts to take Plaintiff's claim from the conceivable to the plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Verified Complaint also includes numerous allegations that might be considered "redundant, immaterial, impertinent, or scandalous matter" subject to a motion to strike under Fed. R. Civ. P. 12(f).

Although labeled as a claim under 42 U.S.C. § 1983, Plaintiff's claim appears to sound principally in due process. *See* , *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (Rule 8 does not require that a complaint correctly state the legal theory supporting the claim); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal").

Regardless of whether Plaintiff can ultimately prevail, the Verified Complaint facially attempts to assert a federal constitutional claim under 42 U.S.C. § 1983. Plaintiff arguably alleges protected speech and petitioning activity through public criticism of Defendants and the appellate justices, a media investigation into alleged judicial misconduct, court filings raising judicial-ethics concerns, and advocacy for judicial reform. The Verified Complaint also alleges that Defendants, acting under color of law or in joint action with state officials, took adverse action because of protected activity. (Verified Compl. [1-1], ¶¶ 62-76, 77-81, 93-106.)

Judicial estoppel cannot create, waive, or eliminate federal subject-matter jurisdiction. A federal court has an independent obligation to determine jurisdiction, even in the absence of a challenge from a party, as demonstrated

by Judge Blakey in the previous case by raising the *Rooker-Feldman* issue himself. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Federal jurisdiction depends on the applicable statutes and the allegations set forth in the complaint, not on a party's characterization of prior pleadings. Where the allegations of the complaint state a claim involving a federal question, the district court should exercise the jurisdiction conferred by Congress.

JUDICIAL ESTOPPEL DOES NOT BAR THE IJA FROM REMOVING THIS ACTION

Plaintiff also argues for judicial estoppel, citing *New Hampshire v. Maine,* 532 U.S. 742 (2001). That argument is unpersuasive.

Judicial estoppel applies where (1) a party's later position is "clearly inconsistent" with its earlier position, (2) the party against whom estoppel is asserted succeeded in persuading the court in the earlier proceeding, and (3) the party would derive an unfair advantage or impose an unfair detriment if not estopped. *New Hampshire*, 532 U.S. at 750-51; *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010).

The IJA has not taken inconsistent positions. In the prior federal action, the IJA argued that *Rooker-Feldman* barred Plaintiff's Complaint and First Amended Complaint. In this removed action, the IJA argues that the current Verified Complaint asserts federal claims on its face and is therefore removable.

Under *New Hampshire*, the IJA's positions are not clearly inconsistent. Its position in the prior case was that *Rooker-Feldman* barred the Complaint and First Amended Complaint. Its present position is that the current Verified Complaint asserts a federal claim on its face. Both positions can be true because the jurisdictional analysis turns on the allegations of the complaint and the injury alleged.

The dismissal of Plaintiff's complaints in the previous case established, at most, that the earlier complaints were jurisdictionally barred. Neither Judge Blakey's dismissal of those complaints under *Rooker-Feldman*, nor the Seventh Circuit's affirming of the dismissal, established that every later complaint arising from related events would automatically be nonremovable or outside of federal jurisdiction.

Plaintiff cannot establish unfair prejudice merely because the IJA removed a complaint that on its face invokes federal constitutional claims. Plaintiff remains free to contest jurisdiction, and the Court remains obligated to decide jurisdiction independently. Ordinary litigation expense is not enough to transform an objectively reasonable removal into judicial-estoppel misconduct.

Judicial estoppel also cannot create or destroy subject-matter jurisdiction. Federal courts have an independent obligation to determine jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456

U.S. 694, 702 (1982) (parties cannot consent to subject-matter jurisdiction, so principles of estoppel do not apply); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Because jurisdiction turns on the statute and the operative complaint, not on a party's prior litigation rhetoric, judicial estoppel cannot require remand where the complaint pleads federal claims within 28 U.S.C. §§ 1331 and 1343. (Verified Compl. [1-1], ¶¶ 7, 117-123.)

PLAINTIFF'S REQUEST FOR FEES SHOULD BE DENIED

Plaintiff's request for fees and costs under 28 U.S.C. § 1447(c) should be denied. Fees are appropriate only where the removing party, here the IJA, lacked an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005).

IJA had, at minimum, an objectively reasonable basis to remove. Plaintiff's Verified Complaint expressly invokes § 1983, alleges Fourteenth Amendment violations, and alleges action under color of state law. Removal of a complaint pleading federal civil-rights claims is objectively reasonable. *See*, 28 U.S.C. §§ 1331, 1343, 1441(a); *Martine v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (court should deny attorney's fees under § 1447(c) when an objectively reasonable basis for removal exists).

## RELIEF REQUESTED

WHEREFORE, Defendant, the Illinois Judges Association, requests that:

1. Plaintiff's Motion to Remand to State Court for Lack of Jurisdiction be denied; and
2. Plaintiff's request for fees and costs under 28 U.S.C. § 1447(c) be denied.

Respectfully submitted,

PROGAR LAW GROUP LLC
Attorneys for Defendant,
Illinois Judges Association

*s/ Michael J. Progar*
One of Its Attorneys

Michael J. Progar (IL ARDC No. 6181280)
PROGAR LAW GROUP LLC
Attorneys for Defendant,
Illinois Judges Association
200 W. Adams Street, Suite 2220
Chicago, IL 60606-5231
(312) 630-9630
*mjp@progarlaw.com*