**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Edward "Coach" Weinhaus**, <br><br> *Plaintiff,* <br><br> v. <br><br> **Regina A. Scannicchio** and the **Illinois Judges Association**, <br><br> *Defendants.* | Case No.: 1:26-cv-03091 <br><br> Judge: Hon. Jeremy C. Daniel |

**Plaintiff's Combined Reply in Further Support of His Motion to Remand to State Court for Lack of Jurisdiction and Rule 11 Motion for Sanctions Against Defendant Illinois Judges Association and Its Attorneys, Progar Law Group LLC**

Plaintiff Edward "Coach" Weinhaus ("Coach"), respectfully submits this Combined Reply in Further Support of His Motion to Remand to State Court for Lack of Jurisdiction and his Rule 11 Motion for Sanctions Against Defendant Illinois Judges Association and Its Attorneys, Progar Law Group LLC because, as clearly illustrated in his underlying Motions, the Court's jurisdiction over these claims was previously decided by this Court, undisturbed by the Seventh Circuit, and the removal of this action was objectively unreasonable. In further support of his Motions, Plaintiff states as follows:

### INTRODUCTION AND BACKGROUND

The facts, circumstances, and procedural background of this matter are well detailed in Plaintiff's Motion to Remand to State Court for Lack of Jurisdiction (the "Motion to Remand") [Dkt. 13] and his Rule 11 Motion for Sanctions Against Defendant Illinois Judges Association and Its Attorneys, Progar Law Group LLC (the

1

"Motion for Sanctions") [Dkt. 15]. So, rather than burdening the court with a lengthy recitation, it is sufficient to say:

This is the latest attempt by Plaintiff to vindicate his Equal Protection and Due Process rights which were interfered with by Defendants Regina A. Scannicchio ("Scannicchio?") and the Illinois Judges Association (the "IJA") when, via extra-judicial acts, they interfered with a long since dismissed state court appeal. As a result of that conduct, Plaintiff filed the original iteration of this lawsuit, Edward "Coach" Weinhaus v. Regina A. Scannicchio, *et al.*, in the U.S. District Court for the Northern District of Illinois, Case No.: 1:24-cv-03061 (the "Blakey Action"). The Blakey Action's original and amended complaints were each dismissed, *sua sponte*, pursuant to the *Rooker-Feldman* Doctrine. Because neither the Seventh Circuit nor the Supreme Court saw fit to disturb that dismissal, the matter was re-filed in the Circuit Court of Cook County, Illinois.

Ultimately, the IJA removed that lawsuit back to this Court and, recognizing that the question of the Court's jurisdiction had already been decided, Plaintiff moved to Remand and sought sanctions for the improper removal. In Defendant's Memorandum Of Law In Response To Plaintiff's Motion To Remand To State Court For Lack Of Jurisdiction (the "Response") and its Memorandum Of Law In Response To Plaintiff's Rule 11 Motion For Sanctions (the "Sanctions Response", together, the "Responses"), it argued: Rooker-Feldman does not apply here because the Verified Complaint adduced new and different allegations - *it does not*; a prior dismissal does not preclude the court from exercising jurisdiction over these claims - *it does*; that it

2

is not estopped from removal because it has not taken a prior inconsistent position - *by its own words, it has*; and that either fees or sanctions inappropriate because it had an objectively reasonable basis for removal - there was no basis for removal once this Court has decided the jurisdictional question. While Plaintiff is grateful that the IJA has adopted his perspective on this court's jurisdiction, such revelation should have come before dismissal of the Blakey Action.

**ARGUMENT**

In its Responses, Defendant points to numerous paragraphs within the Verified Complaint [Dkt. 1-1] that show the source of Plaintiff's injury was not an adverse state court decision but extra-judicial acts by Defendants that interfered with Plaintiff's Constitutionally protected rights. Response, pp. 3-5, 8-12. It argues these are new allegations materially different from those in the Blakey Action. Id., at p. 2, ¶ 3 ("[t]he prior dismissal under Rooker-Feldman was jurisdictional, not a decision on the merits, and does not automatically bar removal of the materially revised Verified Complaint."); Sanctions Response, p. 3, ¶ 2 ("[t]he present removal was based on the current Verified Complaint, which Plaintiff materially revised to allege extra-judicial conduct and injury independent of the state-court judgment.") They are not.

The allegations in the Verified Complaint and original complaint in the Blakey Action are substantially similar if not identical. Had Defendant or its Counsel reviewed the pleadings at issue, *or heeded Plaintiff's Counsel's Rule 11 warning*, it would have been clear that of the proffered allegations it used to support its removal, the overwhelming majority are practically identical to the allegations in the original

3

Complaint in the Blake Action. See Comparison of Specific Allegations, attached as Exhibit 1. Exhibit 1 compares the specific paragraphs Defendant points to as new and unique, and serve as its basis for removal; as is clear with even a cursory review, the majority of the allegations are verbatim, the rest are nearly identical. The Original Complaint in the Blakey Action is attached as Exhibit 2.

a. **Questions Of This Court's Jurisdiction Have Already Been Decided and the Parties are Precluded from Relitigating That Settled Question**

In its Response, Defendant recognizes that a dismissal for lack of jurisdiction is not an adjudication on the merits and cites Perry v. Sheahan, for the proposition that "[s]uch a dismissal may have an issue-preclusive effect only as to the precise jurisdictional issue actually litigated and necessarily decided." Response, p. 7 (citing Perry, 222 F.3d 309 (7th Cir. 2000)). However, Perry supports the proposition that once jurisdiction has been determined, the parties are precluded from relitigating that question.

The Seventh Circuit is clear: "[a]lthough only judgments on the merits preclude parties from litigating the same cause of action in a subsequent suit, that does not mean that dismissals for lack of jurisdiction have no preclusive effect at all. **A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue.**" Perry, 222 F.3d at 318 (internal citation and quotations omitted). It continued to state: "[w]e held that where a prior suit is dismissed for lack of jurisdiction, the inclusion of additional factual allegations on the jurisdictional issue will not avoid issue preclusion **when those facts were available at the time the original complaint was filed**." Id., at 318 (referencing

4

<u>Magnus Elecs., Inc. v. La Republica Argentina</u>, 830 F.2d 1396, 1401 (7th Cir. 1987)) (emphasis added). "A judgment dismissing a suit for lack of jurisdiction does not preclude a party from litigating the same cause of action in a court of competent jurisdiction, however, it does 'preclude relitigation of the issue of whether the first tribunal had jurisdiction[.]'" <u>Magnus Elecs., Inc.</u> 830 F.2d at 1401 (citing <u>Harper Plastics, Inc. v. Amoco Chems. Corp.</u>, 657 F.2d 939, 943 (7th Cir. 1981)).

Here, there is no question that the Verified Complaint addresses the same facts and circumstances that gave rise to Plaintiff's claims in the Blakey Action – the deprivation of his Constitutionally protected rights. Nor can there be any serious argument that Plaintiff's claims here are any different from those in the Blakey Action – both are claims for violation civil rights, pursuant to § 1983 for due process and equal protection violations.

Finally, Defendant is left to argue that the Verified Complaint adduces some new facts or allegations – it does not, see <u>Exhibit 1</u> – that amount to a materially revised complaint which the Court should review with a fresh perspective. <u>Response</u>, pp. 8-9, 11-12. But this argument asks the Court to ignore the clear instruction from the Seventh Circuit: that a litigant is precluded from relitigating a jurisdictional question that has already been addressed. Regardless, the allegations in both complaints are substantially similar and where they are not substantially similar, they are identical. And there is no question, comparing original complaint to original complaint "those facts were available at the time the original complaint was filed." <u>Perry</u>, at 318.

### 1. *The Verified Complaint Here Does Not Materially Different from the Original Complaint in the Blakey Action*

Defendant's Response largely adopts the arguments Plaintiff made before the Seventh Circuit on appeal of the Blakey Action – that the genesis of this lawsuit is the extra-judicial acts of Defendants, not any underlying state court decision.

Defendant IJA's Response argues that the Verified Complaint is materially different because it: frames the injury as arising from pre-dismissal extra-judicial conduct; adds allegations about undisclosed conflicts of interest and IJA membership; and includes more detailed allegations about the appellate justices' failure to disclose. In support of these arguments Defendant cites numerous paragraphs within the underlying Verified Complaint.

First and foremost, as discussed above, and clearly delineated in Ex. 1, Comparison of Specific Allegations, the Verified Complaint and the original Complaint in the Blakey Action are substantially similar. The majority of the allegations within the two pleadings are identical and those allegations that are not identical are substantially similar.

Plaintiff's original and amended complaint in the Blakey Action pointed out that the 'fundamental character' of the claims arose from the deprivation of Plaintiff's Constitutionally protected rights and that the resolution that the Blakey Action would not impact any state court decision. The same arguments Defendant now makes in opposition to *Rooker-Feldman* were all made by Plaintiff before the Seventh Circuit. See Plaintiff's Briefing before the Seventh Circuit, *attached to the* Motion to Remand as Exhibit 3.

6

Moreover, the suggestion that the Verified Complaint adduces additional facts and allegations about the IJA and Judge Scannicchio's conduct as it relates to their acts to financial, institutional, and/or reputational interests can only be made if Defendant failed to review the original complaint in the Blakey Action. As shown in Ex 1., Comparison of Specific Allegations, the allegations relating to Defendant's conduct are almost identical between the Verified Complaint and the original Complaint in the Blakey Action. Accordingly, this matter must be remanded back to the Circuit Court of Cook County, Illinois because the Court lacks jurisdiction to adjudicate these claims.

### b. Defendant IJA's Own Prior Position Establishes and Satisfies Judicial Estoppel and Bars Removal of This Lawsuit to Federal Court

Defendant cannot be permitted to assume fundamentally inconsistent jurisdictional positions as litigation strategy dictates. Having successfully argued, in the Blakey Action, before the District Court and the Seventh Circuit, that these very claims are barred by the *Rooker-Feldman* doctrine, the IJA now contends that the Verified Complaint is properly before this Court. That reversal is the textbook definition of judicial estoppel.

As discussed in the Motion to Remand, New Hampshire v. Maine, requires the Court to examine (1) whether the later position is "clearly inconsistent" with an earlier one; (2) whether the party succeeded in persuading a court of its earlier position; and (3) whether the party would derive an unfair advantage or impose an unfair detriment if not estopped. 532 U.S. 742, 749–51 (2001). All three are satisfied here.

7

First, the IJA's positions are irreconcilably inconsistent. In the Blakey Action, before the District Court and the Seventh Circuit, the IJA argued that Plaintiff's claims are "inextricably intertwined" with the state court judgment and barred from federal court "no matter how pled." IJA's Memorandum Of Law In Support Of Defendant Illinois Judges Association's Motion To Dismiss Plaintiff's [Original] Complaint, Dkt. 14, in Blakey Action, attached to Motion to Remand as Exhibit 2. It cannot now argue that those identical allegations are removable to federal court. Defendant's own brief in the Blake Action is a concession that re-framing the complaint does not change the jurisdictional calculus. The words "no matter how pled" are Defendant's words, not Plaintiff's.

Next, Defendant succeeded. The District Court dismissed the original and amended complaint in the Blakey Action and the Seventh Circuit declined to disturb the same. The IJA prevailed at every turn on precisely theory it now abandons.

Finally, to his detriment, Plaintiff has been forced to relitigate the same question against the same opponent – spending time and money to brief issues already exhausted on appeal – after refiling in the only forum left to him. The moment Plaintiff filed in state court, and state court discovery obligations attached, the IJA reversed course. Allowing this jurisdictional gamesmanship to succeed would impose precisely the manifest injustice that judicial estoppel exists to prevent. See New Hampshire, 532 U.S. at 749.

The IJA's Response argues that its positions are reconcilable because the Verified Complaint contains new allegations, but **it does not**. As exhaustively

8

argued above and clearly demonstrated by <u>Exhibit 1</u>, the pleadings at issue – the Verified Complaint and the original Complaint in the Blakey Action are nearly identical. Accordingly, this matter must be remanded back to the Circuit Court of Cook County, Illinois because the Court lacks jurisdiction to adjudicate these claims.[1]

### c. **Defendant's Removal To This Court Is Sanctionable Because It Was Both Objectively Unreasonable And Otherwise Frivolous**

### 1. *Defendant, Progar Law Group LLC, and Mr. Michael J. Progar Were Unreasonable When They Removed This Matter Back To Federal Court*

The Seventh Circuit's objective reasonableness standard asks "whether the party **or his counsel** should have known that his position is groundless." <u>Cuna Mut. Ins. Soc. v. Off. & Pro. Emps. Int'l Union, Loc. 39</u>, 443 F.3d 556, 560 (7th Cir. 2006) (emphasis added) (quoting <u>Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731</u>, 990 F.2d 957, 963 (7th Cir.1993)). Critically, the question of Rule 11 sanctions is personalized and accounts for what the attorney knew. Here, no objectively reasonable attorney, standing in Mr. Progar's shoes, could have certified this removal in good faith

Mr. Progar personally signed pleadings arguing, without qualification, that Plaintiff's claims were barred by the *Rooker-Feldman* doctrine "*no matter how*

---

1. Even if estoppel doctrine does not independently void the removal, it remains relevant because a party that invokes federal jurisdiction after personally securing its elimination cannot credibly claim that removal was anything other than a mechanism "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The record supports this conclusion without requiring any inference. The removal happened after re-filing in state court, and the practical consequence was to pause Illinois state-court discovery rules, which are more demanding than their federal counterparts. Purpose of removal is established by the consequence, and the consequence here is clear.

*pled*[,]"[2] and that the District Court "*correctly concluded that Weinhaus's claim would necessarily require it to examine the validity of the state court decision.*"[3] That argument did not prevail via footnote; it won before Judge Blakey at the district court, before the Seventh Circuit on direct appeal, survived a petition for rehearing and rehearing *en banc*, and was left undisturbed when the Supreme Court denied *certiorari*. When the whole of the federal judiciary adopts your argument, the objective reasonableness inquiry begins with the reality that you personally established – that federal courts lack subject-matter jurisdiction over these claims.

The removal filing inverted that position entirely. More damning still, when Plaintiff's counsel called to discuss the removal, Mr. Progar acknowledged full awareness of the prior litigation and candidly stated that he had privately disagreed with the prior dismissal rulings. That admission is not "accusation," as IJA's brief characterizes Plaintiff's showing — it is a party-opponent statement establishing that the removal was not the product of a good-faith legal assessment made after reasonable inquiry, but rather a tactical maneuver made by an attorney who knew full well it contradicted every judicial pronouncement he had himself secured. A lawyer who signs a brief arguing that jurisdiction is absent, obtains a favorable ruling, watches a plaintiff be directed to state court as a result, and then removes to the very court he argued lacked jurisdiction — while privately conceding he disagreed

---

2.  IJA's Memorandum Of Law In Support Of Defendant Illinois Judges Association's Motion To Dismiss Plaintiff's Complaint, Dkt. 14, in Blakey Action, attached to Motion to Remand as Exhibit 2

3.  Brief Of Appellee Illinois Judges Association, Summary Of The Argument, p. 9 (Ex. Pg. 59), signed by Michael J. Progar, *attached to the* Motion to Remand as Exhibit 3.

with those rulings all along — cannot credibly claim that his removal was objectively reasonable.

Moreover, Rule 11(b) requires that every paper presented to the court reflect a certification that, after reasonable inquiry, its legal contentions "are warranted by existing law." Fed. R. Civ. P. 11(b)(2).  Where an attorney's own prior filings, and their subsequent adoption by every level of the federal judiciary, constitute the existing law of this very case, no reasonable inquiry could support a contrary certification.  Mr. Progar and his firm were not uninvolved attorneys encountering a close jurisdictional question for the first time.  Mr. Progar was the architect of the jurisdictional framework that resulted in dismissal of these claims from federal court. His subsequent removal of the same plaintiff's substantively identical claims is not a good faith argument for extending or modifying existing law under Rule 11(b)(2) — it is a direct repudiation of the law he'd just prevailed on.

The IJA's Sanctions Response argues "Plaintiff cannot plead a federal civil-rights claim and then characterize removal as frivolous merely because Plaintiff would prefer to litigate the federal claim in state court." Sanctions Response, p. 7. However, that is precisely the rule. Perry, 222 F.3d at 318 ("where a prior suit is dismissed for lack of jurisdiction, the inclusion of additional factual allegations on the jurisdictional issue will not avoid issue preclusion when those facts were available at the time the original complaint was filed.").  Moreover, because federal courts have an independent obligation to assess jurisdiction, then a removal premised on a claim of jurisdiction that this very court and the Seventh Circuit have already three times

11

rejected is not merely questionable — it is objectively unreasonable and underscores why this removal fails the Rule 11 threshold.

### 2. *Removal Was Made In Bad Faith And For An Improper Purpose*

Plaintiff is not in federal court because this Court determined it has jurisdiction. He is here because Defendant decided to re-import this litigation to the forum that had thrice declared that it lacked jurisdiction to hear the case. The practical effect, regardless of intent, is that Plaintiff has *no* effective forum. His claims were deemed beyond this Court's jurisdiction, and his state court complaint was whisked back to the very court from which he had just been excluded. If this conduct is permitted to stand without sanction, no legal principle prevents any well-resourced defendant from engineering identical results in any civil rights case where a prior federal dismissal exists on jurisdictional grounds.

Rule 11's deterrence function is not merely prospective as to the individual parties, it operates to protect the integrity of the judicial process and the rights of litigants who would be subject to similar conduct. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) ("Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, any interpretation must give effect to the Rule's central goal of deterrence.")

That protective function is critical here, because Defendant's litigation strategy creates a replicable playbook for institutional defendants to neutralize civil rights claims entirely: first, argue that federal courts lack jurisdiction and upon dismissal and re-filing in state court, *as directed*; immediately remove the claim back

12

to federal court, thus preventing any state court forum from becoming operative. The result is the complete jurisdictional nullification of a plaintiff's civil rights claims — not through any principled legal argument, but through the strategic deployment of contradictory positions at opposite ends of the same litigation.

As a result, the Court should impose sanctions. Not just to make Plaintiff whole for the costs incurred by this removal, but to fulfill Rule 11's deterrence mandate. Cooter & Gell, 496 U.S. at 393. Because this is precisely the scenario in which a well-resourced institutional defendant can, without cost, deploy contradictory jurisdiction arguments to ensure that a civil rights plaintiff is perpetually in the wrong court. The asymmetry of resources amplifies the harm: each improper procedural maneuver costs Defendant comparatively little while imposing disproportionate burden on Plaintiff, an individual, that has already litigated these jurisdictional questions for years.

Rule 11(c)(4) instructs sanctions be calculated to "deter repetition of the conduct or comparable conduct by others similarly situated." A sanction limited to attorney's fees incurred on the Motion to Remand and Motion for Sanctions is the minimum necessary and the Court should make explicit that the basis for sanction is not a borderline jurisdictional dispute, but the weaponization of prior, court-adopted jurisdictional arguments to exhaust a civil rights plaintiff's resolve and limited resources. Such decision will signal to similarly situated defendants that litigating jurisdictional positions to final resolution, and then inverting them when procedurally convenient, is not a costless strategy.

13

**d.** **The Court Should Award Fees And Costs Because Defendant's Removal was Unreasonable Given its Prior Positions**

There is no serious question that Defendant's removal to Federal Court was more than improper, it was frivolous. Defendant has long argued that these claims belong in state court and as soon as they we filed in the Circuit Court of Cook County, Defendant reversed course and demanded removal.

In its Responses, Defendant argues it had a good faith basis because the claims at issue sound in civil rights and are brought pursuant to Section 1983. But these arguments are specious at best if not outright disingenuous. The Blakey Action brought the same claim for violation of Plaintiff's Equal Protection and Due Process rights and was predicated on an almost identical complaint. Instead, their removal was a strategic gambit to avoid their state court discovery obligations, to delay Plaintiff's adjudication of his claims, and to exhaust his finite resources. Accordingly, the Court should award sanctions for Plaintiff and against Defendant in the amount of $24,706.50 Dollars based on Counsel's 27.3 hours[4] of attorney time spend preparing this Motion and the contemporaneously filed Rule 11 Motion for Sanctions Against Defendant Illinois Judges Association and Its Attorneys, Progar Law Group LLC, which were billed at Plaintiff's Counsel's agreed upon hourly rate of $905 per hour based on the Laffey Matrix, Counsel's experience, and the complexity of this particular litigation.

---

4. Billing descriptions of contemporaneously recorded time entries are attached as Exhibit 3.

## Conclusion

For the reasons articulated in Plaintiff's Motion to Remand to State Court for Lack of Jurisdiction and further supported in this Reply in Further Support of His Motion to Remand to State Court for Lack of Jurisdiction, Plaintiff respectfully requests that the Court remand this matter back to state court and award sanctions in the amount of $24,706.50 Dollars for costs and actual expenses, including attorney fees, incurred as a result of the removal.

Dated:  June 2, 2026                    Respectfully Submitted,


By:      */s/Adam Florek*

Adam Florek, No.: 6320615
**FLOREK LAW, LLC**
552 Seventh Ave., Suite 601
New York, New York 10018
Tel: +1 929 229-2268
E-Mail: aflorek@florekllc.com

*Counsel for Plaintiff Edward "Coach" Weinhaus*

15

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document with the clerk of the Court using the CM/ECF filing system, which should further distribute a true and accurate copy of the foregoing to all counsel of record.

By: ___*/s/Adam Florek*___